## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT C. ASHE, Individually and on Behalf of All Others Similarly Situated, | **Case No.**   1:23-cv-764 (AMN/DJS) |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ARROW FINANCIAL CORPORATION, THOMAS J. MURPHY, PENKO K. IVANOV, and EDWARD J. CAMPANELLA, | |
| Defendants. | |

Plaintiff Robert C. Ashe ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Arrow Financial Corporation ("Arrow" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Arrow securities between

March 12, 2022 and May 12, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Arrow is a bank holding company that provides commercial and consumer banking, as well as financial products and services.  The Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ").  Accordingly, the Company is subject to the NASDAQ's listing and periodic filing requirements, including the requirement to timely file quarterly and annual reports with the SEC.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Arrow maintained defective disclosure controls and procedures and internal controls over financial reporting; (ii) the foregoing increased the risk that the Company could not timely file one or more of its periodic financial reports with the SEC as required by the NASDAQ's listing requirements; (iii) accordingly, Arrow was at an increased risk of being delisted from the NASDAQ; (iv) following the disclosure of deficiencies in the Company's disclosure controls and procedures and internal controls over financial reporting, Arrow downplayed the severity of these issues and the associated risks; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On March 16, 2023, Arrow disclosed that it could not timely file its annual report on Form 10-K with the SEC for the quarter and year ended December 31, 2022 (the "2022 10-K") because "[t]he Company requires additional time to complete the assessment of the effectiveness

of internal controls over financial reporting as of December 31, 2022." Arrow also advised that it "believes that the [2022 10-K] will be filed within the extension period provided under Rule 12b-25 of the [Exchange Act], as amended."

5.      On this news, Arrow's stock price fell $0.99 per share, or 3.64%, to close at $26.21 per share on March 17, 2023.

6.      On March 31, 2023, Arrow disclosed that "it will not be able to timely file the [2022 10-K]" within the extension period provided under Rule 12b-25 of the Exchange Act, as amended. The same filing also noted that Defendants expect to disclose deficiencies in the Company's internal controls over financial reporting in the purportedly forthcoming 2022 10-K, which related to, *inter alia*, the failure to (i) design and maintain an effective risk assessment process, (ii) design and maintain effective monitoring activities to provide sufficient management oversight over the internal control evaluation process to support the internal control objectives, and (iii) assess and communicate the severity of identified deficiencies in a timely manner to those individuals responsible for taking corrective action.

7.      On May 11, 2023, Arrow disclosed that it could not timely file its quarterly report on Form 10-Q with the SEC for the quarter ended March 31, 2023 (the "1Q23 10-Q") "because the Company continued to require additional time to complete management's assessment of the effectiveness of internal controls over financial reporting as of December 31, 2022[.]"

8.      On this news, Arrow's stock price fell $0.33 per share, or 1.66%, to close at $19.59 per share on May 12, 2023.

9.      On April 5, 2023, Arrow disclosed that, on April 3, 2023, it received a notice of non-compliance with the NASDAQ's periodic filing requirements because of the Company's failure to timely file the 2022 10-K with the SEC.

10.     Then, on May 15, 2023, Arrow disclosed that, on May 12, 2023, it received a second notice of non-compliance with the NASDAQ's periodic filing requirements because of the Company's failure to timely file the 1Q23 10-Q with the SEC.  Arrow also disclosed that the Company's "President and Chief Executive Officer and a member of the Board of Directors of Arrow . . . terminated his employment as President and CEO and as a director of the Company and from all other positions he holds with the Company and its affiliates, effective May 12, 2023."

11.     On this news, Arrow's stock price fell $0.53 per share, or 2.71%, to close at $19.06 per share on May 15, 2023.

12.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

15.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Arrow is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

16.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17.   Plaintiff, as set forth in the attached Certification, acquired Arrow securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

18.   Defendant Arrow is incorporated under the laws of New York with principal executive offices located at 250 Glen Street, Glens Falls, New York 12801.  Arrow's common stock trades in an efficient market on the NASDAQ under the ticker symbol "AROW".

19.   Defendant Thomas J. Murphy ("Murphy") has served as Arrow's Chief Executive Officer ("CEO") at all relevant times.  Defendant Murphy also served as the Company's interim Chief Financial Officer ("CFO") from September 30, 2022 to February 21, 2023.

20.   Defendant Penko K. Ivanov ("Ivanov") has served as Arrow's CFO since February 21, 2023.

21.   Defendant Edward J. Campanella ("Campanella") served as Arrow's CFO from before the start of the Class Period to September 30, 2022.

22.   Defendants Murphy, Ivanov, and Campanella are sometimes referred to herein collectively as the "Individual Defendants."

23.   The Individual Defendants possessed the power and authority to control the contents of Arrow's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Arrow's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Arrow, and their

access to material information available to them but not to the public, the Individual Defendants

knew that the adverse facts specified herein had not been disclosed to and were being concealed

from the public, and that the positive representations being made were then materially false and

misleading.  The Individual Defendants are liable for the false statements and omissions pleaded

herein.

24.     Arrow and the Individual Defendants are collectively referred to herein as

"Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Arrow is a bank holding company that provides commercial and consumer banking,

as well as financial products and services.  The Company's common stock trades on the NASDAQ.

Accordingly, the Company is subject to the NASDAQ's listing and periodic filing requirements,

including the requirement to timely file quarterly and annual reports with the SEC.

### Materially False and Misleading Statements Issued During the Class Period

26.     The Class Period begins on March 12, 2022, the day after Arrow filed an annual

report on Form 10-K with the SEC, reporting the Company's financial and operational results for

the quarter and year ended December 31, 2021 (the "2021 10-K").  With respect to the maintenance

and design of Arrow's controls and procedures, the 2021 10-K stated, in relevant part:

> Senior management maintains disclosure controls and procedures that are designed
> to ensure that information required to be disclosed in our Exchange Act reports is
> recorded, processed, summarized and reported within the time periods provided in
> the SEC's rules and forms, and that such information is accumulated and
> communicated to our management, including the [CEO] and [CFO], as appropriate,
> to allow timely decisions regarding required disclosure.

27.    The 2021 10-K also provided generic, boilerplate representations regarding the

purported cost-benefit limitations of designing and evaluating Arrow's disclosure controls and

procedures, stating, in relevant part:

> In designing and evaluating the disclosure controls and procedures, senior
> management has recognized that any controls and procedures, no matter how well
> designed and operated, can provide only reasonable assurance of achieving the
> desired control objectives, and therefore has been required to apply its judgment in
> evaluating the cost-benefit relationship of possible controls and procedures.

Plainly, the foregoing risk warning was a generic, catch-all provision that was not tailored to

Arrow's actual known risks regarding deficiencies in its internal controls, much less the failure to,

*inter alia*, (i) design and maintain an effective risk assessment process, (ii) design and maintain

effective monitoring activities to provide sufficient management oversight over the internal control

evaluation process to support the internal control objectives, and (iii) assess and communicate the

severity of identified deficiencies in a timely manner to those individuals responsible for taking

corrective action.

28.    Despite the foregoing risk warning, the 2021 10-K assured investors that "[s]enior

management, including the [CEO] and [CFO], evaluated the effectiveness of the design and

operation of our disclosure controls and procedures (as defined in Rule 13(a)-15(e) under the

Exchange Act) as of December 31, 2021", and that "[b]ased upon that evaluation, senior

management, including the [CEO] and [CFO], concluded that our disclosure controls and

procedures were effective on that date."

29.    Likewise, the 2021 10-K assured investors that "[o]ur management assessed the

effectiveness of our internal control over financial reporting as of December 31, 2021", and that

"[b]ased on our assessment, our management concluded that our internal control over financial

reporting was effective as of December 31, 2021."

30.     In addition, the 2021 10-K represented that "[t]here were no changes made in our internal controls or in other factors that could significantly affect these internal controls subsequent to the date of the evaluation performed by the [CEO] and [CFO]."

31.     Appended as an exhibit to the 2021 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2022  ("SOX"), wherein Defendants Murphy and Campanella certified that "[t]he [2021 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act], as amended" and that "[t]he information contained in the [2021 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.     On May 6, 2022, Arrow filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2022 (the "1Q22 10-Q").  With respect to Arrow's disclosure controls and procedures and internal control over financial reporting, the 1Q22 10-Q stated, in relevant part:

> Senior management, including the [CEO] and [CFO], has evaluated the effectiveness of the design and operation of Arrow's disclosure controls and procedures (as defined in Rule 13a-15(e) under the [Exchange Act], as amended) as of March 31, 2022. Based upon that evaluation, senior management, including the [CEO] and [CFO], concluded that disclosure controls and procedures were effective. Further, there were no other changes in Arrow's internal control over financial reporting that occurred during the quarter ended March 31, 2022, that materially affected, or are reasonably likely to materially affect, Arrow's internal control over financial reporting.

33.     Appended as an exhibit to the 1Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendants Murphy and Campanella.

34.     On August 5, 2022, Arrow filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2022 (the "2Q22 10-Q").  With respect to Arrow's disclosure controls and procedures and internal control over financial reporting, the 2Q22 10-Q stated, in relevant part:

> Senior management, including the [CEO] and [CFO], has evaluated the effectiveness of the design and operation of Arrow's disclosure controls and procedures (as defined in Rule 13a-15(e) under the [Exchange Act], as amended) as of June 30, 2022. Based upon that evaluation, senior management, including the [CEO] and [CFO], concluded that disclosure controls and procedures were effective. Further, there were no other changes in Arrow's internal control over financial reporting that occurred during the quarter ended June 30, 2022, that materially affected, or are reasonably likely to materially affect, Arrow's internal control over financial reporting.

35.     Appended as an exhibit to the 2Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendants Murphy and Campanella.

36.     On September 30, 2022, Defendant Campanella resigned as Arrow's Senior Executive Vice President, Treasurer, and CFO.  Simultaneously, the Board of Directors of the Company appointed Defendant Murphy as Arrow's interim Treasurer, CFO, and Principal Accounting Officer, in addition to his role as CEO.

37.     On November 7, 2022, Arrow filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2022 (the "3Q22 10-Q").  With respect to Arrow's disclosure controls and procedures and internal control over financial reporting, the 3Q22 10-Q stated, in relevant part:

> Senior management, including the [CEO] and Interim [CFO], has evaluated the effectiveness of the design and operation of Arrow's disclosure controls and procedures (as defined in Rule 13a-15(e) under the [Exchange Act], as amended) as of September 30, 2022. Based upon that evaluation, senior management, including the [CEO] and Interim [CFO], concluded that disclosure controls and procedures were effective.

38.     In addition, the 3Q22 10-Q—*i.e.*, Arrow's first quarterly report following Defendant Campanella's resignation as the Company's CFO—disclosed that "[d]uring the quarter ended September 30, 2022, Arrow implemented a new core banking system and internal controls over financial reporting were revised in connection with this change."  With respect to this change to the Company's internal control over financial reporting, the 3Q22 10-Q assured investors that

"Arrow's pre- and post-implementation internal controls over financial reporting were both evaluated by management and deemed to be operating effectively" and that "there were no other changes in Arrow's internal control over financial reporting that occurred during the quarter ended September 30, 2022, that materially affected, or are reasonably likely to materially affect, Arrow's internal control over financial reporting."

39.     Despite the foregoing assurances, the 3Q22 10-Q also provided generic, boilerplate risk warnings regarding "[p]otential [c]omplications with the implementation of our new core banking system [that] *could* adversely impact our business and operations" (emphasis added).  In particular, the 3Q22 10-Q stated, in relevant part:

> During September 2022, Arrow completed the implementation of a new core banking system which replaced the prior system. The new core system will enable future enhancements to our digital experience, improve efficiency for our teams and customers, and empower data-driven decisions. This upgrade constitutes a major investment in Arrow's technology needs and is a key initiative within its strategic plan. The new core system implementation process has required, and will continue to require, the investment of significant personnel and financial resources. We are now using the new core system. We encountered some limited issues and worked to minimize any inconvenience to customers, but there can be no assurance that such issues will not arise in the future.

Plainly, the foregoing risk warning was a generic, catch-all provision that was not tailored to Arrow's actual known risks regarding deficiencies inherent in the design and execution of its controls following the migration from its legacy core system to its new operating system.

40.     Appended as an exhibit to the 3Q22 10-Q were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendant Murphy.

41.     The statements referenced in ¶¶ 26-35 and 37-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to

disclose that: (i) Arrow maintained defective disclosure controls and procedures and internal controls over financial reporting; (ii) the foregoing increased the risk that the Company could not timely file one or more of its periodic financial reports with the SEC as required by the NASDAQ's listing requirements; (iii) accordingly, Arrow was at an increased risk of being delisted from the NASDAQ; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

42.     On March 16, 2023, during after-market hours, Arrow filed a notification of late filing on Form 12b-25 with the SEC (the "Late 2022 10-K Notice"), signed by Defendant Murphy, disclosing the Company's inability to timely file the 2022 10-K with the SEC.  Specifically, the Late 2022 10-K Notice stated, in relevant part:

> Arrow . . . is unable to file its [2022 10-K] within the time period prescribed without unreasonable effort or expense. The Company requires additional time to complete the assessment of the effectiveness of internal controls over financial reporting as of December 31, 2022. As a result of the foregoing, KPMG LLP, the Company's independent registered accounting firm, has not yet completed its audit procedures.

43.     On this news, Arrow's stock price fell $0.99 per share, or 3.64%, to close at $26.21 per share on March 17, 2023.  Despite this decline in the Company's stock price, Arrow securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the severity of the Company's deficient internal controls and their impact on the Company's ability to timely file its periodic financial reports with the SEC, as required by the NASDAQ's listing requirements.

44.     For example, the Late 2022 10-K Notice stated, in relevant part, that "the Company believes that the [2022 10-K] will be filed within the extension period provided under Rule 12b-

25 of the [Exchange Act], as amended, but can provide no assurance that it will be able to file by

such time."

45.     On March 31, 2023, Arrow filed an amended notification of late filing on Form

12b-25/A with the SEC (the "Amended Late 2022 10-K Notice"), signed by Defendant Ivanov,

stating, in relevant part:

> The Company has now determined that it will not be able to timely file the [2022 10-K] by March 31, 2023 . . . .
>
> The Company continues to require additional time to complete management's assessment of the effectiveness of internal controls over financial reporting as of December 31, 2022. Although management's assessment is not complete, management has identified and expects it will disclose deficiencies in the Company's internal controls over financial reporting in the 2022 Form 10-K, including the following: (i) the failure to design and maintain an effective risk assessment process; (ii) the failure to design and maintain effective monitoring activities relating to (a) providing sufficient management oversight over the internal control evaluation process to support the internal control objectives, and (b) assessing and communicating the severity of identified deficiencies in a timely manner to those individuals responsible for taking corrective action; and (iii) the design and execution of controls with respect to the Company's core system including post-migration from its legacy core system Bankway to its new operating system FIS Horizon in September 2022 such as with respect to the general ledger account reconciliation process. Once management has completed its assessment, it may conclude that these or other deficiencies may be determined to be material weaknesses. As a result of the foregoing, KPMG LLP, the Company's independent registered accounting firm, has not yet completed its audit procedures.

46.     Despite the foregoing, the Amended Late 2022 10-K Notice also assured investors,

in relevant part:

> The Company is working diligently to file the [2022 10-K] as soon as practicable.
>
> * * *
>
> [T]he Company does not expect any material change to the financial results included in the [2022 10-K] compared to those included in the Company's earnings press release furnished to the Securities and Exchange Commission under the Company's Current Report on Form 8-K filed January 30, 2023 ("January Form 8-K"). Please refer to the January Form 8-K for a comparison of the results of operations for the fiscal year ended December 31, 2022 as compared to the fiscal

year ended December 31, 2021. For the avoidance of doubt, the Company does not expect that the identified deficiencies will result in material misstatements or omissions in its previously reported financial statements or that the Company will have to restate its previously reported financial information.

47.     On April 5, 2023, Arrow filed a current report on Form 8-K with the SEC, signed by Defendant Ivanov, disclosing that the Company had received a notice from the NASDAQ on April 3, 2023, which stated that the Company is noncompliant with the periodic filing requirements for continued listing on the NASDAQ.  The Form 8-K stated, in relevant part:

On April 3, 2023, Arrow . . . received a notice from the Listing Qualifications Department of The NASDAQ Stock Market LLC ("Nasdaq") that the Company is noncompliant with the periodic filing requirements for continued listing set forth in Nasdaq Listing Rule 5250(c)(1) (the "Rule") as a result of its failure to file its [2022 10-K] with the [SEC] by the required due date (the "Nasdaq Notice").

As previously reported by the Company in its [Late 2022 10-K Notice], filed with the SEC on March 16, 2023, as amended [i]n [the Amended Late 2022 10-K Notice], the Company was unable to timely file the [2022 10-K] without unreasonable effort or expense. The Company intends to submit the [2022 10-K] as soon as practicable.

The Company is required to submit a plan, within 60 calendar days of receiving the Nasdaq Notice, or by June 2, 2023, which outlines the steps the Company expects to take to become compliant with the Rule. If Nasdaq accepts the Company's plan, Nasdaq may grant an exception of up to 180 calendar days from the due date of the [2022 10-K], as extended by Rule 12b-25, or by September 27, 2023, to regain compliance. However, there can be no assurance that Nasdaq will accept the Company's plan to regain compliance or that the Company will be able to regain compliance within any extension period granted by Nasdaq. If Nasdaq does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a Nasdaq hearings panel.

The Nasdaq Notice has no immediate effect on the listing or trading of the Company's shares of common stock, though Nasdaq will broadcast an indicator over its market data dissemination network noting the Company's noncompliance. If the Company remains noncompliant with the Rule at the end of the 180-day exception period, the Company's shares of common stock will be subject to delisting from Nasdaq.

48.     The statements referenced in ¶¶ 44 and 46-47 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material

adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company could not timely file the 1Q23 10-Q with the SEC as required by the NASDAQ's listing requirements; (ii) accordingly, Arrow was at an increased risk of being delisted from the NASDAQ; (iii) Arrow downplayed the severity of its defective disclosure controls and procedures and internal controls over financial reporting, as well as the risks inherent in those defective controls; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

49.     On May 11, 2023, during after-market hours, Arrow filed a notification of late filing on Form 12b-25 with the SEC (the "Late 1Q23 10-Q Notice"), signed by Defendant Ivanov, disclosing the Company's inability to timely file the 1Q23 10-Q with the SEC.  Specifically, the Late 1Q23 10-Q Notice stated, in relevant part:

> Arrow . . . will be unable to file its [1Q23 10-Q] within the time period prescribed without unreasonable effort or expense.

> The Company previously filed [the Late 2022 10-K Notice] on March 16, 2023, as amended [i]n [the Amended Late 2022 10-K Notice], disclosing that the Company would be unable to file its [2022 10-K] within the time period prescribed, as extended by Rule 12b-25 under the [Exchange Act], as amended ("Rule 12b-25"), without unreasonable effort or expense because the Company continued to require additional time to complete management's assessment of the effectiveness of internal controls over financial reporting as of December 31, 2022 (the "Assessment").

> As the Company has yet to file the [2022 10-K], the Company will be unable to timely file the [1Q23 10-Q].

> . . . . As a result of the foregoing, KPMG LLP, the Company's independent registered accounting firm, has not yet completed its audit procedures with respect to the [2022 10-K] and review procedures with respect to the [1Q23 10-Q].

50.     On this news, Arrow's stock price fell $0.33 per share, or 1.66%, to close at $19.59 per share on May 12, 2023.  Despite this decline in the Company's stock price, Arrow securities

continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding the severity of the Company's deficient internal controls and their impact on the Company's ability to timely file its periodic financial reports with the SEC, as required by the NASDAQ's listing requirements.

51.     For example, the Late 1Q23 10-Q Notice continued to assure investors, in relevant part, that "[t]he Company is working diligently to complete the Assessment and file the [2022 10-K] and the [1Q23 10-Q] as soon as practicable" and that, "[o]nce the Company completes the Assessment and files the [2022 10-K], the Company will promptly complete and file the [1Q23 10-Q] as soon as practicable."

52.     The statements referenced in ¶ 51 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Arrow was at an increased risk of being delisted from the NASDAQ; (ii) Arrow downplayed the true scope and severity of its defective disclosure controls and procedures and internal controls over financial reporting, as well as the risks inherent in those defective controls; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Fully Emerges

53.     On May 15, 2023, during pre-market hours, Arrow filed a current report on Form 8-K with the SEC (the "May 2023 8-K"), disclosing receipt of a second notice of non-compliance with the NASDAQ's periodic filing requirements as a result of its inability to timely file the 1Q23 10-Q:

> As previously disclosed in the Current Report on Form 8-K filed April 5, 2023 (the "April Form 8-K"), by the Company, the Company received a notice from the

Listing Qualifications Department of The NASDAQ Stock Market LLC ("Nasdaq") that the Company is noncompliant with the periodic filing requirements for continued listing set forth in Nasdaq Listing Rule 5250(c)(1) (the "Rule") as a result of its failure to file its [2022 10-K] with the [SEC] by the required due date (the "April Nasdaq Notice").

On May 12, 2023, the Company received an additional notice from Nasdaq that the Company remains noncompliant with the Rule as a result of its failure to file its [1Q23 10-Q] with the SEC by the required due date (the "May Nasdaq Notice" and, together with the April Nasdaq Notice, the "Nasdaq Notices"). As disclosed by the Company on its [Late 1Q23 10-Q Notice], filed with the SEC on May 11, 2023, the Company was unable to timely file the [1Q23 10-Q] without unreasonable effort or expense.

* * *

As previously disclosed in the April Form 8-K, the Company is required to submit a plan, within 60 calendar days of receiving the April Nasdaq Notice, or by June 2, 2023, which outlines the steps the Company expects to take to become compliant with the Rule. If Nasdaq accepts the Company's plan, Nasdaq may grant an exception of up to 180 calendar days from the due date of the 2022 Form 10-K, as extended by Rule 12b-25, or by September 27, 2023, to regain compliance. However, there can be no assurance that Nasdaq will accept the Company's plan to regain compliance or that the Company will be able to regain compliance within any extension period granted by Nasdaq. If Nasdaq does not accept the Company's plan, then the Company will have the opportunity to appeal that decision to a Nasdaq hearings panel. The Company currently expects to file one plan to address the Nasdaq Notices.

The Nasdaq Notices have no immediate effect on the listing or trading of the Company's shares of common stock, though Nasdaq will continue to broadcast an indicator over its market data dissemination network noting the Company's noncompliance. If the Company remains noncompliant with the Rule at the end of the 180-day extension period, the Company's shares of common stock will be subject to delisting from Nasdaq.

54.    The May 2023 8-K also revealed that Defendant "Murphy, the President and [CEO] and a member of the Board of Directors of Arrow . . . terminated his employment as President and CEO and as a director of the Company and from all other positions he holds with the Company and its affiliates, effective May 12, 2023."

55.     On this news, Arrow's stock price fell $0.53 per share, or 2.71%, to close at $19.06 per share on May 15, 2023.

56.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

57.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Arrow securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

58.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Arrow securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Arrow or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

59.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

60.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

61.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Arrow;

- whether the Individual Defendants caused Arrow to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Arrow securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

62.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

63.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Arrow securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Arrow securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

64.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

65.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.   This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

68.   During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Arrow securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Arrow securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

69.   Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Arrow securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Arrow's finances and business prospects.

70.   By virtue of their positions at Arrow, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

71.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Arrow, the Individual Defendants had knowledge of the details of Arrow's internal affairs.

72.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Arrow.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Arrow's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Arrow securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Arrow's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Arrow securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

73.     During the Class Period, Arrow securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Arrow securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Arrow securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Arrow securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

74.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

76.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

77.     During the Class Period, the Individual Defendants participated in the operation and management of Arrow, and conducted and participated, directly and indirectly, in the conduct of Arrow's business affairs.  Because of their senior positions, they knew the adverse non-public information about Arrow's misstatement of income and expenses and false financial statements.

78.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Arrow's financial condition and results of operations, and to correct promptly any public statements issued by Arrow which had become materially false or misleading.

79.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Arrow disseminated in the marketplace during the Class Period concerning Arrow's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Arrow to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Arrow within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Arrow securities.

80.     Each of the Individual Defendants, therefore, acted as a controlling person of Arrow.  By reason of their senior management positions and/or being directors of Arrow, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Arrow to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Arrow and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

81.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Arrow.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 23, 2023                         Respectfully submitted,

                                              POMERANTZ LLP

                                              */s/ Jeremy A. Lieberman*
                                              Jeremy A. Lieberman
                                              J. Alexander Hood II
                                              600 Third Avenue, 20th Floor
                                              New York, New York 10016
                                              Telephone: (212) 661-1100
                                              Facsimile: (917) 463-1044
                                              jalieberman@pomlaw.com
                                              ahood@pomlaw.com

                                              *Attorneys for Plaintiff*