**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ROBERT C. ASHE and JEFFREY S. GOHN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>ARROW FINANCIAL CORPORATION, THOMAS J. MURPHY, PENKO K. IVANOV, and EDWARD J. CAMPANELLA,<br><br>     Defendants. | **Case No. 1:23-cv-00764-AMN-DJS**<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS**

**POMERANTZ LLP**
Jeremy A. Lieberman
Brenda Szydlo (admitted *pro hac vice*)
Dean P. Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
bszydlo@pomlaw.com
dferrogari@pomlaw.com

*Attorneys for Plaintiffs and the
Proposed Class*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 2

III.  ARGUMENT ...................................................................................................... 2

    A.    The Requested Award of Attorneys' Fees is Reasonable ...................................... 2

        1.    Legal Standards for an Award of Attorneys' Fees Support Approval ........ 2

        2.    The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors ............... 3

            a.    Time and Labor Expended by Lead Counsel ................................. 4

            b.    The Risks of the Litigation ............................................................ 6

            c.    The Magnitude and Complexity of the Litigation ......................... 8

            d.    The Quality of Lead Counsel's Representation ............................. 8

            e.    The Requested Fee in Relation to the Settlement ......................... 10

            f.    Public Policy Considerations ........................................................ 11

        3.    The Requested Fee is Reasonable Under the Lodestar Cross-Check ....... 12

    B.    Reimbursement of Litigation Expenses ................................................................. 13

    C.    The Proposed Awards to Plaintiffs Are Reasonable ............................................ 14

IV.   CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aponte v. Comprehensive Health Mgmt., Inc.*,
  2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)..............................................................................5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985).................................................................................................................3

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999),
  *superseded on other grounds*, Fed. R. Civ. P. 23(e)(2),
  *as recognized in Vasquez v. A+ Staffing LLC*,
  2024 WL 3966246, at *16 (E.D.N.Y. Aug. 27, 2024)............................................................11

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................................................3

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..............................................................................................................2, 3

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974),
  *abrogated on other grounds*,
  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)...................................6, 10, 12

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014),
  *aff'd sub nom.,Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)...............................8, 12

*Eltman v. Grandma Lee's, Inc.*,
  1986 WL 53400 (E.D.N.Y. May 28, 1986) ...............................................................10, 11, 12

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..............................................................................................3, 4, 6, 12

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................................................................3

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).........................................................................6, 8

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006).....................................................................................................13

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................................14

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..........................................6, 11, 12, 13

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
  2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ............................................................10

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
  *aff'd sub nom., In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016).......................5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................6, 7, 9, 11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................11, 15

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...........................................4, 13, 14

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................6, 12

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).............................................................................6

*In re Jumia Techs. S.A. Sec. Litig.*, 1:19-cv-04397 (PKC)
  (S.D.N.Y. Mar. 24, 2021), Dkt. Nos. 121-9, 128.....................................................13

*In re KeySpan Corp. Sec. Litig.*,
  2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ....................................................10, 13

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............................................................14, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................11

*In re Petrobras Sec. Litig.*,
  312 F.R.D. 354 (S.D.N.Y. 2016),
  *aff'd in part, vacated in part on other grounds sub nom.,*
  *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) ................................................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................................14

*In re Sterling Foster & Co. Sec. Litig.*,
    238 F. Supp. 2d 480 (E.D.N.Y. 2002) ...................................................................13

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)...................................................3, 15

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................3

*Karimi v. Deutsche Bank Aktiengesellschaft*, 1:22-cv-02854 (JSR)
    (S.D.N.Y. Feb. 6, 2023), Dkt. Nos. 108-3, 110 ...................................................13

*Khait v. Whirlpool Corp.*,
    2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................................11

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009)...............................................................8

*Moses v. N.Y. Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ...................................................................................4

*Pirnik v. Fiat Chrysler Autos. N.V.*, 1:15-cv-07199 (JMF)
    (S.D.N.Y. Sept. 5, 2019), Dkt. Nos. 361-3, 369 .................................................13

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)....................................................................................4

*Too v. Rockwell Med., Inc.*, 1:18-cv-04253 (ARR) (RER)
    (E.D.N.Y. Feb. 26, 2020), Dkt. Nos. 62-6, 65 .....................................................13

*Vasquez v. A+ Staffing LLC*,
    2024 WL 3966246 (E.D.N.Y. Aug. 27, 2024)......................................................11

*Velez v. Novartis Pharms. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)......................................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005),
    *superseded on other grounds*, Fed. R. Civ. P. 23(e)(2),
    *as recognized in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) .......3, 4

*Washenik v. Pub. Pension Funds (In re Bank of Am. Corp. Sec., Derivative, &
    Emp. Ret. Income Sec. Act (ERISA) Litig.)*, 772 F.3d 125 (2d Cir. 2014)..............15

*West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970),
    *aff'd*, 440 F.2d 1079 (2d Cir. 1971).......................................................................7

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................2, 4, 14

**Rules**

Fed. R. Civ. P. 23...................................................................................................1, 4, 11

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff Robert C. Ashe ("Lead Plaintiff") and Plaintiff Jeffrey S. Gohn (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.[1]

## I.    INTRODUCTION

Plaintiffs are pleased to present for the Court's approval a Settlement that recovers $850,000 for the Settlement Class. Lead Counsel have not received any compensation for this case while litigating it even as they risked attorney time and money. They now ask that the Court award attorneys' fees in the amount of 33.4% of the Settlement Amount, or $283,900, plus any interest earned on this amount at the same rate as earned by the Settlement Fund, for reaching this favorable result.

This action was risky. Even if Plaintiffs were able to defeat Defendants' motion to dismiss, they still would have faced significant obstacles and risks in certifying a class, defeating Defendants' anticipated summary judgment motion, proving their claims at trial, and defending the verdict on appeal. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages. The action would have involved significant expert discovery to establish damages and likely would have involved a battle of the experts. The risks that Lead Counsel would never get paid after spending countless hours of attorney time and significant sums of its own money justify the $283,900 award.

Lead Counsel also seek reimbursement of their out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $41,850.52. *See* Declaration of Brenda Szydlo in

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement dated June 7, 2024 ("Stipulation") (Dkt. No. 37-3). Emphasis is added and internal citations and quotations are omitted unless otherwise specified.

1

Support of Plaintiffs': (I) Motion for Final Approval of Proposed Class Action Settlement; and (II) Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Szydlo Decl."), Exhibit 2 (Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl.")) ¶6. These expenses were reasonable and necessary to prosecute and resolve the claims against Defendants successfully.

Finally, Plaintiffs have spent time leading this action on behalf of the class. They request an award of $2,000 for Lead Plaintiff Robert C. Ashe and $2,000 for named Plaintiff Jeffrey S. Gohn, or $4,000 in total, as authorized under the Private Securities Litigation Reform Act of 1995 ("PSLRA") to compensate them for their time. 15 U.S.C. § 78u-4(a)(4); Szydlo Decl. ¶¶36-37.

Lead Counsel and Plaintiffs' work in steering this action to a successful conclusion amply justifies the requests they make. The Court should approve attorneys' fees of $283,900 plus interest, approve reimbursement of $41,850.52 in expenses, plus interest, and award Plaintiffs $4,000 in total for their work as Class Representatives.

## II.    STATEMENT OF FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in Section II of the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement, filed concurrently herewith and incorporated by reference herein.

## III.    ARGUMENT

### A.    The Requested Award of Attorneys' Fees is Reasonable

#### 1.    Legal Standards for an Award of Attorneys' Fees Support Approval

The Supreme Court, the Second Circuit, and the district courts within this Circuit have all recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444

U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005).

Attorneys' fee awards from common funds both encourage representatives to seek redress for damages caused to an entire class of persons and prevent that class from being unjustly enriched by the representative's success. *See Boeing*, 444 U.S. at 478; *Goldberger*, 209 F.3d at 47. The incentives the common fund doctrine provides are what permits private actions to serve as "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). Awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007); *see also Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

### 2. The Requested Fee is Fair and Reasonable Under the Percentage-of-Recovery Method and the Second Circuit's *Goldberger* Factors

The Supreme Court has consistently held that courts may employ the percentage-of-recovery approach to determine attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In *Goldberger*, the Second Circuit examined the history of the alternative methods for calculating attorneys' fees and expressly approved the percentage-of-recovery method in awarding fees from a common fund. *Goldberger*, 209 F.3d at 50. Indeed, "[t]he trend in this Circuit is toward the percentage method" when awarding attorneys' fees in common fund cases. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful

3

incentive for the efficient prosecution and early resolution of litigation"), *superseded on other grounds*, Fed. R. Civ. P. 23(e)(2), *as recognized in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).

The percentage of recovery method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *13 (E.D.N.Y. Sept. 18, 2007). One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart*, 396 F.3d at 121 (one of the merits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460–61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement"). In *Goldberger*, the Second Circuit set forth the six factors that courts should consider in determining whether a fee request is reasonable:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Each of these factors supports the fee requested here.

### a.    Time and Labor Expended by Lead Counsel

Lead Counsel has worked diligently for 1.5 years to achieve the Settlement, expending 831.99 hours for an aggregate lodestar of $638,664.75. Szydlo Decl. ¶30. For this matter, Lead Counsel: (i) conducted a comprehensive investigation which included interviews with former employees of Arrow, (ii) conducted detailed reviews of Arrow's SEC filings, press releases, and

4

other publicly available information; (iii) researched the applicable law with respect to the claims asserted in the action and the potential defenses thereto, in addition to relevant accounting and SEC guidance; (iv) had consultations with experts; (v) prepared and filed the complaint and the amended complaint; (vi) began preparing opposition papers with respect to Defendants' motion to dismiss; (vii) engaged in arm's length settlement negotiations and drafted the settlement documents; (viii) presented the settlement to this Court by way of a motion for preliminary approval of the proposed Settlement; (ix) provided case updates and Court filings to Plaintiffs; and (x) oversaw the provision of Notice to the proposed Settlement Class and monitored the work of the Claims Administrator. Szydlo Decl. ¶20.

Moreover, Lead Counsel's work will not end with the filing of the instant motions or the Court's approval of the Settlement. Lead Counsel will necessarily spend more time and resources drafting and filing the replies in support of its motions, preparing for and appearing at the final Settlement Hearing scheduled for January 10, 2025, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries. Szydlo Decl. ¶35; *Aponte v. Comprehensive Health Mgmt., Inc.*, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("That Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."). Lead Counsel will seek no additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the

5

time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016).

For these reasons, the time and labor Lead Counsel invested in this suit support the requested fee.

### b.      The Risks of the Litigation

The requested fee is also reasonable because Lead Counsel obtained a favorable result though it faced substantial risks. "[T]he risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable fee. *Goldberger*, 209 F.3d at 54. "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger*, 209 F.3d at 43. In applying this factor, "'[l]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

Courts have recognized that "class actions confront even more substantial risks than other forms of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010). Securities class actions in particular are "notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA" and other changes in the law. *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities

6

laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

Further, courts have described as "misplaced" an attorney's confidence that he or she can predict with any degree of certainty the outcome of litigation. *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). The court in *West Virginia* pointed to two instances in which it had disapproved of proposed settlements only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.* In many cases, attorneys pursue securities class actions for years only to have summary judgment entered against their clients or win a judgment they could not collect. Szydlo Decl. ¶32.

From the outset of this action, Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. *Id.* ¶35. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. *Id.* With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis, as defense counsel were. *Id.*; *see also Flag Telecom*, 2010 WL 4537550, at *27. Indeed, Lead Counsel received no compensation from this case during the litigation and have incurred $41,850.52 in expenses in prosecuting this action for the benefit of the Settlement Class. Szydlo Decl. ¶31.

Despite the many uncertainties regarding the outcome of the case, as detailed more fully in Plaintiffs' memorandum in support of their motion for final approval of the Settlement, Lead Counsel undertook this case on a wholly contingent basis. Lead Counsel did so knowing that the litigation could last for years and would require the devotion of a substantial amount of time and

expenses. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.

### c.  The Magnitude and Complexity of the Litigation

Courts recognize the "notorious complexity" of securities class actions. *AOL Time Warner*, 2006 WL 903236, at *8; *see also La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (describing securities class actions as "inherently complex"). If the Action had not settled, continued litigation would have included additional motion practice, including a class certification motion, a summary judgment motion, and *Daubert* motions; extensive discovery, likely including the review of thousands of pages of internal documents as well as depositions of fact and expert witnesses; a trial; post-trial motion practice; and appeals.

At many junctures, securities class action plaintiffs must prove esoteric concepts to recover on their claims. For example, to prove damages, plaintiffs must hire an expert to combat defendants' expert when putting a price figure not only on the disclosure of information that was allegedly fraudulently withheld but also on all other confounding information released at the same time and at other times during the class period. Szydlo Decl. ¶26. These are not simple tasks.

Accordingly, the magnitude and complexity of the Action support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### d.  The Quality of Lead Counsel's Representation

As stated above, Lead Counsel conducted a comprehensive investigation which included interviews with former employees of Arrow, conducted detailed reviews of Arrow's SEC filings, press releases, and other publicly available information; researched the applicable law with respect to the claims asserted in the action and the potential defenses thereto, in addition to relevant

8

accounting and SEC guidance; had consultations with experts; prepared and filed the complaint and the amended complaint; and engaged in arm's length settlement negotiations and drafted the settlement documents. Szydlo Decl. ¶20. The $850,000 Settlement is an excellent result for the class.

Moreover, the positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). The Settlement Class overwhelmingly favors the Settlement. To alert potential Settlement Class Members of the Settlement, the Claims Administrator mailed and/or emailed 7,029 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and Proof of Claim and Release Form (the "Claim Form" and together with the Notice, the "Notice Packet") to potential class members and their nominees. Additionally, the Notice Packet was posted on the Claims Administrator's website along with a link for online claim filing and a list of important deadlines. Moreover, the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") was published online on the *PR Newswire* and in print in the *Investor's Business Daily*. Szydlo Decl., Ex. 1 (Declaration of Sarah Evans ("Evans Decl.")) ¶¶11, 13.

The notice informed Settlement Class Members about the Settlement, the attorneys' fees that would be requested by Lead Counsel, and that Settlement Class Members could exclude themselves from the Settlement or object to any part thereof. As of December 11, 2024, only one week before the deadline to object or opt out, the Claims Administrator and Lead Counsel have not received any requests for exclusion and not a single objection to the Settlement or proposed attorneys' fees. Szydlo Decl. ¶15; Evans Decl. ¶¶14-15.

9

The standing and prior experience of Lead Counsel are also relevant in determining fair compensation. *See, e.g.*, *Grinnell*, 495 F.2d at 470-71; *Eltman v. Grandma Lee's, Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). Here, Plaintiffs and the Settlement Class are represented by Pomerantz LLP as Lead Counsel. As Pomerantz's firm resume (Dkt. No. 5-8) demonstrates, Lead Counsel have extensive experience in the specialized field of securities litigation. Szydlo Decl. ¶28; *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at *5– 6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities litigation and securities fraud class actions"); *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) (Pomerantz is "qualified, experienced and able to conduct the litigation"), *aff'd in part, vacated in part on other grounds sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017). Lead Counsel leveraged its experience and resources to assess the merits and value of the case and negotiate the Settlement. Szydlo Decl. ¶28.

The quality and vigor of opposing counsel is also important in evaluating the services rendered and challenges overcome by Lead Counsel. *See, e.g.*, *In re KeySpan Corp. Sec. Litig.*, 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005). Throughout the litigation and settlement negotiations, the Defendants were represented by attorneys from O'Melveny & Myers LLP who are skilled and highly respected counsel. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients. Szydlo Decl. ¶29. The fact that Lead Counsel achieved the Settlement while opposed by formidable attorneys further justifies the fee they request.

### e.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements

10

of comparable value." *Comverse*, 2010 WL 2653354, at *3. The fee request of 33.4% of the Settlement Amount, or $283,900, plus interest, falls well within percentages that courts within the Second Circuit have awarded in similar common fund settlements. *See, e.g.*, *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee of $7.75 million settlement, is "well within the range accepted by courts in this circuit"), *superseded on other grounds*, Fed. R. Civ. P. 23(e)(2), *as recognized in Vasquez v. A+ Staffing LLC*, 2024 WL 3966246, at *16 (E.D.N.Y. Aug. 27, 2024); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) (awarding fees on a graduated schedule including 33.3% of the first $10 million of the settlement and 30% of the next $40 million); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding one-third of $13 million settlement).

Under the percentage-of-recovery approach, the attorneys' fees requested by Lead Counsel are fair and reasonable for litigation of this kind and are supported by previous awards made by courts in this Circuit.

### f.    Public Policy Considerations

Private lawsuits further the objective of the federal securities laws to protect investors and consumers against deceptive practices. *Eltman*, 1986 WL 53400, at *9; *Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"). Those lawsuits require competent counsel to prosecute them. *Eltman*, 1986 WL 53400, at *9. Competent counsel will only take on the lawsuits if they can expect reasonable and adequate compensation for their services where they achieve results. "To make certain that the public is represented by talented

and experienced trial counsel, the remuneration should be both fair and rewarding." *Id.* at \*9; *see also City of Providence*, 2014 WL 1883494, at \*18.

The integrity of the markets depends on companies complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here.

### 3.    The Requested Fee is Reasonable Under the Lodestar Cross-Check

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *Grinnell*, 495 F.2d at 470–71. The lodestar is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate and totaling the amounts for all time-keepers. Additionally, a multiplier is typically applied to the lodestar, which "represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Glob. Crossing*, 225 F.R.D. at 468 (citing *Goldberger*, 209 F.3d at 47); *see also Comverse*, 2010 WL 2653354, at \*5 ("Where ... counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

When performing a lodestar "cross-check," the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. Here, Lead Counsel devoted a total of 831.99 hours to the prosecution of the action, resulting in a lodestar of \$638,664.75. Szydlo Decl. ¶30. Based on the requested fee of \$283,900, the lodestar multiplier is .44. *Id.* This is a reasonable multiplier that falls comfortably below the multipliers approved by courts in this Circuit and around the country. *See, e.g.*, *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at \*18, \*28 (S.D.N.Y. Nov. 30, 2010) (approving "a 2.4 multiplier, an enhancement routinely approved as part

12

of the spectrum for multipliers in Second Circuit class fee cases"); *Comverse*, 2010 WL 2653354, at *5 (awarding fee representing a 2.78 multiplier); *In re AT & T Corp.*, 455 F.3d 160, 173 (3d Cir. 2006) (multiplier of 2.99 was reasonable in a case that lasted four months even when "discovery was virtually nonexistent").

The hourly rates used by Lead Counsel to arrive at the lodestar calculation are the firm's current, customary rates. Pomerantz Fee Decl. ¶5. Courts in this Circuit have approved Lead Counsel's requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g.*, *Karimi v. Deutsche Bank Aktiengesellschaft*, 1:22-cv-02854 (JSR) (S.D.N.Y. Feb. 6, 2023), Dkt. Nos. 108-3, 110; *In re Jumia Techs. S.A. Sec. Litig.*, 1:19-cv-04397 (PKC) (S.D.N.Y. Mar. 24, 2021), Dkt. Nos. 121-9, 128; *Too v. Rockwell Med., Inc.*, 1:18-cv-04253 (ARR) (RER) (E.D.N.Y. Feb. 26, 2020), Dkt. Nos. 62-6, 65; *Pirnik v. Fiat Chrysler Autos. N.V.*, 1:15-cv-07199 (JMF) (S.D.N.Y. Sept. 5, 2019), Dkt. Nos. 361-3, 369.

Thus, the time and effort Lead Counsel have devoted to this case to obtain the $850,000 recovery for the Settlement Class confirms that the requested fee is reasonable, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

### B.     Reimbursement of Litigation Expenses

In addition to Lead Counsel's request for a fee award of 33.4% of the Settlement Amount, plus interest, Lead Counsel seeks reimbursement of $41,850.52, plus interest, in litigation costs and expenses incurred in connection with the prosecution of this Action. "Courts routinely grant the expense requests of class counsel." *Gilat*, 2007 WL 2743675, at *18 (quoting *KeySpan*, 2005 WL 3093399, at *18); *see also In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding reimbursement of $100,000 in litigation expenses).

Lead Counsel incurred $41,850.52 in unreimbursed expenses to prosecute this action, which is less than the $85,000 amount described in the Notice and Summary Notice. Pomerantz

Fee Decl. ¶6. Substantial expenses included the (1) costs of an expert retained to analyze damages and help formulate the Plan of Allocation, (2) costs of investigation fees incurred in connection with preparing the amended complaint, (3) online legal research fees, as well as smaller costs such as (4) travel expenses incurred in connection with the final Settlement Hearing, (5) court filing fees, and (6) printing and messenger fees. *Id.* The expenses incurred are reflected in Lead Counsel' books and records and were reasonable and necessary to achieve the Settlement. Pomerantz Fee Decl. ¶7; *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *see also In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 & n.8 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel).

There have been no objections to the $85,000 limit for expenses set forth in the Notice, and the actual amount requested, $41,850.52, is well below the $85,000 limit. Respectfully, the Court should grant Lead Counsel's request for reimbursement of reasonable and necessary litigation expenses.

### C.    The Proposed Awards to Plaintiffs Are Reasonable

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *22 (S.D.N.Y. July 21, 2020); *Gilat*, 2007 WL 2743675, at *19

14

(same); *Washenik v. Pub. Pension Funds (In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.)*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses.… [and] may be awarded in recognition of, for example, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370. Plaintiffs have devoted significant time to this case.

Each of the Plaintiffs spent time monitoring news on the company, reviewing the pleadings, and communicating and corresponding with Lead Counsel regarding the litigation and settlement. Szydlo Decl. ¶37, Exhibits 3-4 (Declarations of Plaintiffs). Therefore, Lead Plaintiff Robert C. Ashe requests an award of $2,000 and Plaintiff Jeffrey S. Gohn requests an award of $2,000, or $4,000 in total, to reimburse them for the time they spent on this case. Such an award is "reasonable and appropriate relative to the … overall settlement." *MetLife*, 689 F. Supp. 2d at 370 (collecting cases); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $16,000 for time spent supervising litigation and characterizing such awards as "routine" in this Circuit); *Giant Interactive Grp.*, 279 F.R.D. at 166 (awarding three lead plaintiffs $10,000 each, and another lead plaintiff $5,400, for time and expenses).

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Lead Counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and awards to Plaintiffs for services rendered to the Settlement Class.[2]

Dated:  December 12, 2024                    Respectfully submitted,

                                             POMERANTZ LLP

                                             */s/ Brenda Szydlo*

---

[2] A [Proposed] Order and Final Judgment was previously submitted. Dkt. No. 37-8.

Jeremy A. Lieberman
Brenda Szydlo (admitted *pro hac vice*)
Dean P. Ferrogari (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
bszydlo@pomlaw.com
dferrogari@pomlaw.com

*Attorneys for Plaintiffs and the Proposed
Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: */s/ Brenda Szydlo*
Brenda Szydlo

1