# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT C. ASHE and JEFFREY S. GOHN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> ARROW FINANCIAL CORPORATION, THOMAS J. MURPHY, PENKO K. IVANOV, and EDWARD J. CAMPANELLA, <br><br> Defendants. | **Case No. 1:23-cv-00764-AMN-DJS** <br><br> **CLASS ACTION** |

**DECLARATION OF BRENDA SZYDLO IN SUPPORT OF PLAINTIFFS': (I) MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (II) MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARDS TO PLAINTIFFS**

I, Brenda Szydlo, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief: [1]

1.      I am an attorney admitted to practice *pro hac vice* in this Court and a Partner at Pomerantz LLP ("Pomerantz"), Lead Counsel for Lead Plaintiff Robert C. Ashe and Plaintiff Jeffrey S. Gohn (collectively, "Plaintiffs") and the class in this Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would competently testify thereto.

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement dated June 7, 2024 ("Stipulation") (Dkt. No. 37-3).

1

2.      I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (I) Final Approval of Proposed Class Action Settlement; and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs. The purpose of this Declaration is to set forth the nature of the investigation, legal briefing, litigation, and negotiations that led to the Settlement with Defendants Arrow Financial Corporation ("Arrow" or the "Company"), Thomas J. Murphy ("Murphy"), Penko K. Ivanov ("Ivanov"), and Edward J. Campanella ("Campanella" and, together with Murphy and Ivanov, the "Individual Defendants," and together with Arrow, "Defendants"). This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable and should be approved by the Court.

3.      The Settlement provides that the Settlement Class Members – certain investors in the securities of Arrow – release the claims advanced in this Action for $850,000.

4.      After Plaintiffs moved for preliminary approval of the Settlement in June 2024 (Dkt. No. 37), the Court signed an order on August 26, 2024 preliminarily approving the Settlement, preliminarily certifying the Settlement Class for the purposes of settlement, and approving the form and manner of providing notice to potential Settlement Class Members. Dkt. No. 39 (Preliminary Approval Order).

5.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel in the amount of 33.4% of the Settlement Amount, or $283,900, plus any interest earned on this amount at the same rate as earned by the Settlement Fund, and reimbursement of Lead Counsel's out-of-pocket litigation expenses incurred in prosecuting this

Action in the amount of $41,850.52, plus interest, as well as an award of $2,000 for Lead Plaintiff Robert C. Ashe and $2,000 for Plaintiff Jeffrey S. Gohn, or $4,000 in total.

6.      Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Sarah Evans Concerning: (A) Dissemination of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (the "Evans Decl."), dated December 11, 2024.

7.      Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Brenda Szydlo on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), dated December 12, 2024.

8.      Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Lead Plaintiff Robert C. Ashe in Support of Plaintiffs': (I) Motion for Final Approval of Proposed Class Action Settlement; and (II) Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs, dated November 21, 2024.

9.      Attached hereto as **Exhibit 4** is a true and correct copy of the Declaration of Plaintiff Jeffrey S. Gohn in Support of Plaintiffs': (I) Motion for Final Approval of Proposed Class Action Settlement; and (II) Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs, dated November 21, 2024.

I.      **Procedural History**

10.     On June 23, 2023, Robert C. Ashe filed the original complaint in this Court commencing the Action. Dkt. No. 1. On August 22, 2023, Lead Plaintiff filed a motion for appointment as lead plaintiff, and approval of lead counsel. Dkt. No. 5. By Order dated September 28, 2023, the Court appointed Robert C. Ashe as Lead Plaintiff and Pomerantz as Lead Counsel for the putative class. Dkt. No. 15.

3

11.     On December 5, 2023, Plaintiffs filed an Amended Class Action Complaint (the "Amended Complaint") against the Defendants and added Plaintiff Jeffrey S. Gohn to the Action. Dkt. No. 25. The Amended Complaint asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. The Amended Complaint alleged, among other things, that during the Settlement Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (i) Arrow maintained defective disclosure controls and procedures and internal controls over financial reporting; (ii) the foregoing increased the risk that the Company could not timely file one or more of its periodic financial reports with the Securities and Exchange Commission ("SEC") as required by the NASDAQ's listing requirements; (iii) accordingly, Arrow was at an increased risk of being delisted from the NASDAQ; and (iv) following the disclosure of deficiencies in the Company's disclosure controls and procedures and internal controls over financial reporting, Arrow downplayed the severity of these issues and the associated risks. The Amended Complaint alleged that Arrow's stock price was artificially inflated as a result of these alleged false and misleading statements, and that Arrow's stock price declined when the truth regarding the alleged misrepresentations was revealed.

12.     On February 9, 2024, Defendants served a motion to dismiss the Amended Complaint. Dkt. No. 31. Among other things, Defendants argued that there were no material false and misleading statements made during the Class Period and that Plaintiffs failed to adequately allege scienter. *Id.*

## II.     Settlement Negotiations and Terms

13.     On April 22, 2024, before Plaintiffs filed an opposition to Defendants' motion to dismiss, the Parties reached an agreement in principle to settle the Action for a payment of

$850,000 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers.

14.    The Settlement provides for a cash payment of $850,000 to resolve the Settlement Class's claims. If the Court grants final approval of the Settlement, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against the settling Defendants that were alleged or could have been alleged in the Action. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed at the motion to dismiss stage, summary judgment and trial, and the Court and jury accepted Plaintiffs' damages theory, the total potential maximum damages would be approximately $5.34 million. The Settlement Amount of $850,000 is approximately 16% of the $5.34 million in estimated damages, significantly above the median recovery of 1.8% of estimated damages for securities class actions settled in 2023, according to a study conducted by NERA Economic Consulting.[2]

15.    Requests for exclusion and objections to the Settlement must be received by December 20, 2024. As of December 11, 2024, neither Lead Counsel nor the Claims Administrator has received any requests for exclusion or any objections to any aspect of the Settlement. *See* Evans Decl. ¶¶14-15. Further, there have been no objections filed on the Court's docket to date.

16.    The Notice of Pendency and Proposed Settlement of Class Action ("Notice") describes the Plan of Allocation. Dkt. No. 37-5 (Notice) at 7-12. Lead Counsel formulated the Plan of Allocation with the help of a damages expert to distribute the Settlement Fund fairly and reasonably to Settlement Class Members, consistent with the federal securities laws and the

---

[2] *See* Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ. Consulting, at 26 (Fig. 22) (Jan. 23, 2024), available at https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf.

principles of loss causation (including negative loss causation). The Plan of Allocation's objective is to equitably distribute the Settlement Fund to those Settlement Class Members who suffered losses as a proximate result of the alleged violations of the securities laws as opposed to losses caused by market, industry, or Company-specific factors unrelated to the alleged violations of law. Under the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Settlement Fund based on his, her, or its total recognized loss amount as compared to the total recognized loss amounts of all Authorized Claimants. As described in the Notice, calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Settlement Fund. To that end, the Plan of Allocation establishes a formula that determines authorized claimants' recognized losses based on the application of the securities laws and Plaintiffs' theories, which calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and awards to Plaintiffs).

17.    An individual claimant's recovery under the Plan of Allocation will depend on a number of factors, including when the claimant purchased, acquired, or sold Arrow securities during the Settlement Class Period, in what amounts, and if any securities were sold, when they were sold and in what amounts, as well as the number of valid claims filed by other claimants.

18.    If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant. Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated

payments are $10.00 or greater. It is my understanding, based on communications with the Claims Administrator, that processing and sending a check for less than $10.00 is cost prohibitive.

19.     In sum, the Plan of Allocation was designed to allocate the proceeds of the Settlement Fund fairly among Settlement Class Members based on the losses they suffered on transactions in Arrow securities that were attributable to the conduct alleged in the Amended Complaint. Lead Counsel believes that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement Fund among Settlement Class Members.

## III.    Complexity, Expense, and Likely Duration of the Litigation

20.     To litigate this action, Lead Counsel: (i) conducted a comprehensive investigation which included interviews with former employees of Arrow, (ii) detailed reviews of Arrow's SEC filings, press releases, and other publicly available information; (iii) researched the applicable law with respect to the claims asserted in the action and the potential defenses thereto, in addition to relevant accounting and SEC guidance; (iv) had consultations with experts; (v) prepared and filed the complaint and the Amended Complaint; (vi) began preparing opposition papers with respect to Defendants' motion to dismiss; (vii) engaged in arm's length settlement negotiations and negotiated the written settlement documents; (viii) presented the settlement to this Court by way of a motion for preliminary approval of the proposed Settlement; (ix) provided case updates and Court filings to Plaintiffs; and (x) oversaw the provision of Notice to the proposed Settlement Class and monitored the work of the Claims Administrator. Thus, before entering into the Settlement, Lead Counsel and Plaintiffs understood the strengths and weaknesses of their case.

21.     If this Action were to proceed, discovery would impose substantial costs, as would the experts Plaintiffs would have to hire. Moreover, Defendants' anticipated motion for summary judgment, *Daubert* motions, and trial would be expensive and risky. Not only would the class risk

recovering nothing at all or less than the Settlement Amount, but because the loser at trial would almost certainly appeal, the class could not collect any judgment for several years.

**IV.    Risk of Continued Litigation**

22.    Plaintiffs and the Settlement Class face numerous risks if this Action does not settle. Indeed, continued litigation could result in lesser or no recovery. Such risks include the fact that the Court might grant Defendants' motion to dismiss or anticipated motion for summary judgment. Discovery of Defendants' internal documents could have borne out Defendants' position that Plaintiffs failed to make any materially false or misleading statements. If the Court were to grant Defendants' motion for summary judgment, then Plaintiffs would have spent years, thousands of attorney hours, hundreds of thousands of dollars (if not more) in costs, and substantial judicial resources, and still get nothing.

23.    Had the Settling Parties continued to litigate this Action, in addition to engaging in discovery, Plaintiffs would have had to move for class certification. This motion would be expensive and time-consuming, requiring Plaintiffs to produce documents, sit for depositions, and engage an expert to opine on the method of calculating damages. In my experience, motions for class certification are typically vigorously opposed by defendants in securities class actions and there can be no assurance that such motion would be granted.

24.    Likewise, the jury might find against Plaintiffs at trial, recovering nothing for Plaintiffs and the Settlement Class after expending significantly more time, expense, judicial resources, and the jury's time.

25.    Even if Plaintiffs prevailed at trial and obtained a favorable jury verdict, there remained a real risk that it might be reversed on appeal. In that case, in addition to all the costs of taking a case through trial, the appeal would be time consuming, taxing the Second Circuit's resources, and Plaintiffs again would be left without any recovery.

26.     Further, proving damages in a securities case is always difficult and invariably requires intricate expert testimony. Disentangling the market's reaction to various pieces of news is a complicated concept. Defendants would oppose any expert Plaintiffs retained with an equally well-credentialed expert expressing the opposite view, and it is impossible to predict how a jury would react to this battle of experts.

27.     Indeed, in a factually and legally complex securities class action lawsuit such as this, responsible counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose.

## V.     The Settlement Resulted From Arm's Length Negotiations Between Experienced Counsel

28.     Lead Counsel is experienced in prosecuting class actions and has successfully prosecuted securities class actions in courts throughout the country, including in this Circuit. *See* Dkt. No. 5-8 (Pomerantz Firm Resume). Lead Counsel has extensive experience in the specialized field of shareholder securities litigation and the firm's attorneys are some of the most experienced securities practitioners in the country. Lead Counsel leveraged its experience and resources to assess the merits and value of the case and negotiate the Settlement.

29.     Throughout the litigation and settlement negotiations, the Defendants were represented by attorneys from O'Melveny & Myers LLP, who are very skilled and highly respected counsel. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients.

## VI.     Lead Counsel's Fee Request is Justified

30.     Lead Counsel has worked diligently to achieve the Settlement for approximately 1.5 years, expending 831.99 hours for an aggregate lodestar of $638,664.75. Pomerantz Fee Decl. ¶4. The lodestar multiplier for the requested fee is .44.

9

31.     Lead Counsel spent a total of $41,850.52 in unreimbursed expenses in connection with the prosecution of this Action, considerably less than the $85,000 amount described in the Notice and the Summary Notice. Pomerantz Fee Decl. ¶6. Lead Counsel has received no compensation from this Action to date.

32.     In many cases, including some of Lead Counsel's, attorneys have pursued securities class actions for years only to have summary judgment entered against them or win a judgment they could not collect.

33.     From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and available to cover the necessary expenses. Indeed, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

34.     The hourly rates Lead Counsel used to arrive at its lodestar calculation are the firm's current, customary rates. Pomerantz Fee Decl. ¶5.

35.     Additionally, Lead Counsel's work will not end with the filing of the instant motions or the Court's approval of the Settlement. Lead Counsel will spend additional time and resources drafting and filing the replies in support of their motions, preparing for and appearing at the final Settlement Hearing scheduled for January 10, 2025, assisting Settlement Class Members with their Proof of Claim forms, overseeing the claims process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

## VII.    The Requested Awards to Plaintiffs Are Justified

36.     Plaintiffs have spent their time leading this Action on behalf of the class. Plaintiffs and Lead Counsel request an award of $2,000 for Lead Plaintiff Robert C. Ashe and $2,000 for

Plaintiff Jeffrey S. Gohn, or $4,000 in total, to compensate them for their time and as an incentive for representative plaintiffs to come forward in cases such as this in the future.

37.     Plaintiffs have devoted a substantial amount of time to this case—150 hours in total. Lead Plaintiff Robert C. Ashe devoted approximately 70 hours to this Action and Plaintiff Jeffrey S. Gohn devoted approximately 80 hours to this Action. Mr. Ashe and Mr. Gohn each spent time monitoring news on the company, reviewing Court filings, and communicating and corresponding with Lead Counsel throughout the pendency of the Action regarding the litigation and Settlement. *See* Exhibits 3-4 (Plaintiffs' Declarations). As such, Plaintiffs and Lead Counsel respectfully request that the Court grant an award of $2,000 for Lead Plaintiff Robert C. Ashe and $2,000 for Plaintiff Jeffrey S. Gohn, or $4,000 in total.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of December, 2024.

*/s/ Brenda Szydlo*
Brenda Szydlo

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


By: */s/ Brenda Szydlo*
Brenda Szydlo

1