**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ROBERT C. ASHE and JEFFREY S. GOHN,
Individually and on Behalf of All Others Similarly
Situated,                                                      1:23-cv-00764
                                                               (AMN/DJS)
                                    Plaintiffs,

v.

ARROW FINANCIAL CORP., THOMAS J.
MURPHY, PENKO K. IVANOV, and EDWARD J.
CAMPANELLA,

                                    Defendants.


APPEARANCES:                              OF COUNSEL:


**POMERANTZ LLP**                         **JEREMY A. LIEBERMAN, ESQ.**
600 Third Avenue-20th Floor               **BRENDA SZYDLO, ESQ.**
New York, NY 10016                        **DEAN P. FERROGARI, ESQ.**
*Attorneys for Plaintiffs*                **JOSEPH A. HOOD, II, ESQ.**

**O'MELVENY & MYERS LLP**                 **WILLIAM SUSHON, ESQ.**
1301 Avenue of the Americas-Suite 1700    **JAVED S. YUNUS, ESQ.**
New York, NY 10019
*Attorneys for Defendants*


**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Robert C. Ashe and Jeffrey S. Gohn ("Named Plaintiffs") bring this putative class action

on behalf of themselves, and all others similarly situated, through counsel Pomerantz LLP ("Lead

Counsel"), against Defendants Arrow Financial Corp. ("Arrow"), Thomas J. Murphy, Penko K.

Ivanov, and Edward J. Campanella, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), and Section 20(a) of the Exchange Act stemming from Arrow's allegedly untrue statements and omissions of material facts designed to deceive the investing public and artificially inflate the price of Arrow securities.  *See* Dkt. No. 26 ("Amended Complaint").  On February 9, 2024, Defendants filed a motion to dismiss.  *See* Dkt. No. 31.

On April 22, 2024, the parties informed the Court that they had reached a settlement, and the Court stayed all remaining deadlines.  *See* Dkt. No. 34; Dkt. No. 35.

 On June 7, 2024, Plaintiffs filed an unopposed Motion for Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures.  *See* Dkt. No. 37.  On August 26, 2024, the Court granted Preliminary Approval and directed that Notice be sent to the Settlement Class Members.  *See* Dkt. No. 39.  On December 12, 2024, Plaintiffs filed an unopposed Motion for Final Approval of Proposed Class Action Settlement ("Final Approval Motion") and an unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Attorneys' Fees Motion").  Dkt. No. 41; Dkt. No. 42.  On January 8, 2025, the Court held a Settlement Hearing during which it signaled its intent to approve the Settlement and the requested attorneys' fees, costs, and Service Award but requested additional information regarding the number of claims submitted by the January 17, 2025 deadline and the recognized loss for each Claimant.  Dkt. No. 44.  On January 20, 2025, Plaintiffs filed the requested update.  Dkt. No. 45.

For the reasons set forth below, the Court hereby grants Plaintiffs' Final Approval Motion and Attorneys' Fees Motion.

## II.    BACKGROUND

### A.  Factual Allegations

Plaintiffs allege that Defendants made materially false and/or misleading statements and/or failed to disclose that: "(i) Arrow maintained defective disclosure controls and procedures and internal controls over financial reporting; (ii) the foregoing increased the risk that [Arrow] could not timely file one or more of its periodic financial reports with the [SEC] as required by the NASDAQ's listing requirements; (iii) accordingly, Arrow was at an increased risk of being delisted from the NASDAQ; and (iv) following the disclosure of deficiencies in the Company's disclosure controls and procedures and internal controls over financial reporting, Arrow downplayed the severity of these issues and the associated risks."  Dkt. No. 41-1 at 9-10. According to the Amended Complaint, "Arrow's stock price was artificially inflated as a result of these alleged false and misleading statements, and [] Arrow's stock price declined when the truth regarding the alleged misrepresentations was revealed."  *Id.* at 10.

### B.  The Settlement

On April 22, 2024, the parties reached an agreement in principle to settle this case for a payment of $850,000 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers.  *Id.*; Dkt. No. 34.  The Settlement Class is defined as "all Persons and entities other than Defendants that purchased or otherwise acquired Arrow securities between August 6, 2022 through May 12, 2023, both dates inclusive, and who were allegedly damaged thereby."  *Id.*; Dkt. No. 37-3 at ¶ 1.37.  Excluded from the Settlement Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.  *Id.*  Also excluded are any persons or entities

who properly excluded themselves by filing a valid and timely request for exclusion in accordance with the requirements set by this Court in its preliminary order. *Id.* According to the Settlement, upon the Court's final approval, Plaintiffs, on behalf of the Settlement Class Members, will forever release their claims against Defendants that were alleged or could have been alleged in this Action, except claims to enforce the terms of the Stipulation or orders or judgments issued by the Court in connection with the Settlement. *Id.* at 11. The Court granted preliminary approval on August 26, 2024. Dkt. No. 39.

### C. Notice

In accordance with this Court's preliminary approval order, the Claims Administrator[1] mailed or emailed the Notice and Proof of Claim Form ("Notice Packet") to potential Settlement Class Members, brokers, and nominee holders. *See* Dkt. No. 41-3 at ¶¶ 2-10. The Notice provided a detailed description of the terms of the Settlement and the Plan of Allocation. *See* Dkt. No. 41-3 (Exhibit A). The Notice also informed potential Settlement Class Members that Pomerantz LLP would seek a fee award not to exceed 33.4% of the Settlement Fund, recovery of actual litigation expenses not to exceed $85,000 plus interest, an award to Named Plaintiffs of no more than $4,000 in total, and that exclusions from the Settlement or objection to any aspect of the Settlement or to the fee and expense request or to the Named Plaintiffs' award request were due no later than December 20, 2024. *Id.*

In total, 7,029 copies of the Notice Packet have been sent to potential Settlement Class Members[2] and their nominees. *Id.* at ¶ 10. The Claims Administrator also posted the Notice Packet

---

[1] Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS") serves as the Claims Administrator. *See* Dkt. No. 39 at ¶ 10.

[2] All capitalized terms have the same meaning as defined in the Stipulation, Dkt. No. 37-3.

to a Settlement website at www.strategicclaims.net/Arrow/.  *Id.* at ¶ 13.  The Claims Administrator initially sent Notice Packets to the 1,141 individuals and organizations identified in the transfer records provided by Lead Counsel, which reflect persons and entities that purchased Arrow securities for their own account, or for the accounts of their clients, during the Settlement Class Period.  Additionally, the Claims Administrator also sent letters to the 2,305 nominees contained in its master mailing list detailing the Settlement and requesting that the nominees provide Notice Packets to the nominees' beneficial owners who might be Settlement Class Members.[3]  *Id.* at ¶¶ 5-7.  The Claims Administrator also posted the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") in *Investor's Business Daily* and transmitted it over *PR Newswire* on September 23, 2024.  *Id.* at ¶ 11.

### D.  Allocation Plan and Distribution

The Notice Packet describes the Plan of Allocation.  Dkt. No. 41-3 at 13-16.  Lead Counsel formulated the Plan of Allocation with the help of a damages expert to distribute the Settlement Fund fairly and reasonably to the Settlement Class Members consistent with the federal securities laws and the principles of loss causation.  Dkt. No. 41-1 at 12-13.  The Plan of Allocation establishes a formula that determines the Authorized Claimants' recognized losses, and those recognized loss amounts are used to calculate Settlement Class Members' *pro rata* share of the Settlement Fund.  *Id.* at 13.  Under the Plan of Allocation, each Authorized Claimant will receive

---

[3] The large majority of potential Settlement Class Members in this case were expected to be beneficial purchasers whose securities were held in the name of the brokerage firm, bank, institution, or other third-party "nominee."  Therefore, the Claims Administrator relied on its master list of such nominees to identify beneficial purchasers which might be a Settlement Class Member.  After the Claims Administrator contacted the nominees, the nominees with relevant beneficial purchasers requested that they be sent Notice Packets to forward to their clients who were potential Settlement Class Members.  *Id.* at ¶¶ 5-7.

his, her, or its *pro rata* share of the Settlement Fund based on his, her, or its total recognized loss amount as compared to the total recognized loss amounts of all Authorized Claimants.  *Id.* Calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid pursuant to the Settlement.  *Id.*  Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Settlement Fund.  *Id.*

### E.  Exclusions, Objections, and Response

Requests for exclusion were required to be postmarked by December 20, 2024.  Objections to the Settlement were also due by December 20, 2024.  As of January 2, 2024, no objections or requests exclusions had been filed.  Dkt. No. 43.

The deadline for submitting claims was January 17, 2025.  Dkt. No. 45 at 2.  As of January 30, 2025, the Claims Administrator had received 3,348 claims, though the Claims Administrator recognized that amount was not final.  *Id.*

### F.  Attorneys' Fees and Costs

Lead Counsel seeks attorneys' fees in the amount of 33.4% of the Settlement Amount, or $283,900 plus interest earned on that amount at the same rate as earned by the Settlement Fund. Dkt. 42-2 at ¶ 5.  Lead Counsel also seeks reimbursement of their out-of-pocket litigation expenses incurred in the prosecution of this case in the amount of $41,850.52.  *Id.*  Those expenses include clerk filing fees, online legal research and document retrieval fees, expert fees, investigator fees, travel expenses, messenger fees, over-time, photocopy, and expenses associated with press releases and newswires.  Dkt. No. 42-4.  Finally, Plaintiffs seek $4,000 in total to award the Named Plaintiffs, Robert C. Ashe and Jeffrey S. Gohn. Dkt. No. 42-2 at ¶ 5.

### III.    DISCUSSION

#### A.  Class Certification

On August 26, 2024, the Court preliminarily certified the Settlement Class.  *See* Dkt. No. 39.  Plaintiffs now request that the Court certify the Class for purposes of effectuating the settlement.  "Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in [Fed. R. Civ. P.] 23(a) and (b) have been satisfied."  *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012) (citation omitted).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" which might preclude findings of predominance under Rule 23(b)(3).  *Amchem Prods., Inc.  v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re AIG*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a settlement class").

Rule 23(a) sets forth four prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  The Second Circuit "has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks and citation omitted).  A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.

R. Civ. P. 23(b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive

construction, and courts are to adopt a standard of flexibility in deciding whether to grant

certification." *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *5 (N.D.N.Y.

Feb. 25, 2021) (internal quotation marks and citation omitted).

### 1. Numerosity

Numerosity "is presumed for classes of 40 or more." *See In re GSE Bonds Antitrust Litig.*,

414 F. Supp. 3d 686, 700 (S.D.N.Y. 2019) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47

F.3d 473, 483 (2d Cir. 1995)). Here, the proposed class satisfies the numerosity requirement

because over 3,348 claims were submitted. Dkt. No. 45.

### 2. Commonality

The purpose of the commonality requirement is to test "whether the named plaintiff's claim

and the class claims are so interrelated that the interests of the class members will be fairly and

adequately protected in their absence." *Lowe v. NBT Bank, N.A.*, No. 3:19-CV-1400 (MAD) (ML),

2022 WL 4621433, at *4 (N.D.N.Y. Sept. 30, 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457

U.S. 147, 157 n.13 (1982)). "Although the claims need not be identical, they must share common

questions of fact or law." *Id.* (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y.

2005)). "The commonality requirement has been applied permissively by courts in the context of

securities fraud litigation, and minor variations in the class members' positions will not suffice to

defeat certification." *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y.2000) (citations omitted).

Here, the proposed Settlement Class also satisfies the commonality requirement. The

Named Plaintiffs and Settlement Class Members bring identical claims, *i.e.*, that Defendant made

material misstatements and omissions which inflated the price of its securities. "Common

questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public, press releases and statements provided to the investment community and the media, and investor conference calls." *Billhofer v. Flamel Tech., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) (citing *Darquea v. Jarden Corp.*, No. 06 Civ. 722, 2008 WL 622811, at *2 (S.D.N.Y. Mar. 6, 2008) and *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y.1997)); *see also In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003) (plaintiffs raised common issues of law and fact, including whether defendants' "public filings and statements contained material misstatements, whether the defendants acted knowingly or with reckless disregard for the truth in misrepresenting material facts in [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements").

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that a class representative have "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Story*, 2021 WL 736962, at *5 (internal quotation marks and citation omitted). "The requirement is met if . . . (1) [the] 'claims of representative plaintiffs arise from [the] same course of conduct that gives rise to claims of the other class members,' (2) . . . 'the claims are based on the same legal theory,' and (3) . . . 'the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative.'" *Id.* (quoting *In re Oxford*, 191 F.R.D. at 375).

The Named Plaintiffs' claims are identical to the Settlement Class Members' claims. Had the claims not settled, "[a]ll members of the class [would have sought] to prove that Defendants made materially false and misleading statements during the Class Period and failed to disclose material adverse facts[.]" *Billhofer*, 281 F.R.D. at 157. "Plaintiff[s] and the other members of the Class are alleged to have been injured by the same course of conduct by Defendants. Moreover, the damages that they seek arise from the purchase of [Arrow securities] at prices that are alleged to have been artificially inflated as a result of Defendants' allegedly false and misleading statements and omissions, and the subsequent decline in the price of [Arrow securities] when aspects of the alleged fraud were revealed." *Id.* Therefore, Plaintiffs "stands in the same position as other purchasers of [Arrow securities] during the Class Period," and the typicality requirement is satisfied. *Id.*

### 4.  Adequacy of the Named Plaintiffs and Lead Counsel

Under this factor, the Court inquires as to "whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (citation omitted). "The adequacy requirement exists to ensure that the named representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Story*, 2021 WL 736962, at *6 (quoting *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007)).

In the present matter, there is no evidence that the interests of the Named Plaintiffs and the Settlement Class Members are at odds. Rather, the record reflects that the Named Plaintiffs and the Settlement Class Members have the same incentive to maximize their compensation for past

harm.  Additionally, Lead Counsel have established that they are qualified, experienced, and well able to litigate this case.  Lead Counsel are experienced in handling class actions, complex litigation, and securities class actions.  *See* Dkt. No. 5-8; *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 16-CV-03495 (AT) (BCM), 2016 WL 5867497, at *5–6 (S.D.N.Y. Oct. 4, 2016) (finding Pomerantz "qualified to serve as lead counsel" because it "possess[ed] significant experience in the area of securities litigation and securities fraud class actions").  As such, the Court finds that the adequacy requirement is met.

### 5.  Certification is Proper Under Rule 23(b)(3)

Pursuant to Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Under Rule 23(b)(3), the "matters pertinent" to these requirements include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3) (A-D).  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citing *Falcon*, 457 U.S. at 157 n.13).  Again, in the settlement context, the Court need not consider management difficulties.  *In re AIG*, 689 F.3d at 242.

Here, again, Plaintiffs have satisfied the requirements of Rule 23(b)(3).  As discussed, common questions of law and fact predominate over any questions that might affect any individual plaintiffs.  Additionally, certifying the proposed Settlement Class will conserve judicial resources

and is more efficient for the Settlement Class Members, particularly those who lack the resources to bring their claims individually.

Accordingly, the Court grants final certification of the Settlement Class for settlement purposes on behalf of all Persons who purchased or otherwise acquired Arrow securities between August 6, 2022 and May 12, 2023, both dates inclusive, and who were allegedly damaged thereby, except excluded from the Settlement Class are all: (i) Individual Defendants; (ii) the officers and directors of Arrow, at all relevant times; (iii) members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns; and (iv) any entity in which the Defendants have or had a controlling interest.[4]

### B. Notice Was Best Notice Practicable

As established in this Court's preliminary order, *see* Dkt. No. 39, the notice procedures described by Lead Counsel and the Claims Administrator are the "best notice practicable." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Therefore, the proposed forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and 15 U.S.C. § 77z-1(a)(7). The Court finds that the Parties implemented the Notice procedures described, consistent with the Court's preliminary order.

"Such notice must 'clearly and concisely state in plain, easily understood language,' the nature of the action, the class definition, and class members' right to exclude themselves from the class, among other things." *In re Celera Corp. Sec. Litig.*, 5:10-cv-02604-EJD, 2015 WL 7351449, at *4-5 (N.D. Cal. Nov. 20, 2015) (citing Fed. R. Civ. P. 23(c)(2)(B)). "While Rule 23 requires

---

[4] Pursuant to Rule 23 of the Federal Rules of Civil Procedure, for the purposes of this Settlement, Lead Counsel and the Named Plaintiffs are also certified as Class Counsel and the Class Representatives on behalf of the Settlement Class for the reasons discussed above.

that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice." *Id.* (citing *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994)); *see also Rannis v. Recchia*, 380 Fed. Appx. 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice"); *see also Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 76-77 (S.D.N.Y. 2003).

The Notice Packet includes all the information required by Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act, including the following, without limitation: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Settlement Class and Class Members; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the reasons for proposing the Settlement; (vi) the fees and expenses, administrative costs, and awards to the Named Plaintiffs to be sought by Lead Counsel; (vii) the Settlement Class Members' rights, including the right to accept, opt-out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees, expenses, or awards to the Named Plaintiffs; (viii) the process for filing a proof of claim form; (ix) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (x) the binding effect of a judgment on Settlement Class Members. Similar Notices have been held to satisfy the requirements of Rule 23 and due process. *See, e.g., In re Synchrony Fin. Sec. Lit.*, 3:18-cv-1818-VAB, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023). Moreover, 7,029 Notice Packets were sent to Settlement Class Members, brokers, and nominee holders. Dkt. No. 41-3 at ¶ 10. The Summary Notice was also disseminated over the PR Newswire and published in Investor's Business Daily on September 23, 2024, and the Notice Packet was available on the Claims Administrator's website along with a link for filing a claim. *Id.* at ¶¶ 11, 13. These

procedures constitute due and sufficient notice of these proceedings and the matters set forth herein to all persons entitled to such notice, especially in light of the number of claims that have been filed.  Dkt. No. 45; *see also, e.g., In re Luckin Coffee Inc. Sec. Litig.*, 1:20-cv-01293-JPC-JLC, 2021 WL 11114633, at *2 (S.D.N.Y. Oct. 26, 2021); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *4-5.

In light of these findings, no Settlement Class Member is relieved from the terms and conditions of the Settlement, including the releases provided for in the Settlement Stipulation, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice.  A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement and to participate in the Settlement Hearing thereon.  The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged.

### C.  Fairness of the Proposed Settlement

#### 1.  Standard of Review

Under Rule 23(e), a court may grant final approval of a proposed settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To perform this evaluation, courts in this Circuit rely on two overlapping multi-factor tests—the factors enumerated in Rule 23(e)(2) and the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[5]  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28-29 (E.D.N.Y. 2019).  Rule 23(e)(2) requires courts to consider

---

[5] The Court understands the factors set forth in the 2018 amendment of Rule 23(e)(2) as clarifying and supplementing the *Grinnell* factors.  *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The goal of this amendment is not to displace any factor, but rather to focus . . . on the core concerns of procedure and substance that should guide the decision.").

whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]

> Under *Grinnell*, the Court also considers the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citation omitted).

## 2. The Settlement is Procedurally Fair Under Rule 23(e)(2)(A)-(B)

A "strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-7192-CM, Case No. 1:18-cv-

---

[6] "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *In re Payment Card*, 330 F.R.D. at 29 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). Whereas "[p]aragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members . . .'" *Id.* (citation omitted).

09784-CM, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (citations omitted).  This presumption of fairness and adequacy applies here.

Based on the submissions before the Court, the Court concludes that the counsel representing the parties are experienced and capable in the litigation at issue here.  As discussed in relation to Settlement Class certification, Lead Counsel is experienced in securities litigation. *See* Section III(A)(4), *supra*.  The parties also engaged in "hard-fought" negotiations after Lead Counsel had conducted a thorough investigation into the strength of Plaintiffs' claims.  Dkt. No. 41-1 at 24.  These arm's-length negotiations involving experienced counsel raise a presumption that the Settlement meets the requirements of due process.  *See Story*, 2021 WL 736962, at *7; *Edwards v. Mid-Hudson Valley Fed. Credit Union*, No. 1:22-CV-00562 (TJM) (CFH), 2023 WL 5806409, at *7 (N.D.N.Y. Sept. 7, 2023).  Moreover, the Settlement was memorialized in a comprehensive Stipulation, further supporting a finding of procedural fairness. Dkt. No. 37-3.  *See Edwards*, 2023 WL 5806409, at *7.  Accordingly, the Court finds that the requirements of Rule 23(e)(2)(A)-(B) have been satisfied.

### 3.  The Settlement is Substantively Fair Under *Grinnell* and Rule 23(e)(2)(C)-(D)

#### a.  The Complexity, Expense, and Likely Duration of Litigation

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy.  *See Grinnell*, 495 F.2d at 463.  This case, had it not settled, would have been all three.  "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them."  *Edwards*, 2023 WL 5806409, at *7 (citation omitted).  This case is no exception.  Indeed, "securities class actions are recognized by courts as 'notably difficult and notoriously uncertain to litigate.'"  *In re Facebook, Inc., IPO Securities and Derivative Litigation*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) (quoting

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993)). Additionally, settlement of this matter avoided the delay and expense that necessarily would have followed, including motion practice and the time needed for the Court to act on those motions. Moreover, had the case reached trial, such a trial would consume tremendous time and resources for all parties and the Court. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### b. The Reaction of the Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Story*, 2021 WL 736962, at *8 (internal quotation marks and citation omitted). "The lack of class member objections may itself be taken as evidencing the fairness of a settlement." *Id.* (internal quotation marks and citation omitted). As of January 3, 2025, over two weeks after the relevant deadline, there was not one Settlement Class Member who had opted out of the Settlement or objected. As such, this factor favors final approval. *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### c. The Stage of the Proceedings and the Amount of Discovery Completed

"The third *Grinnell* factor considers the amount of discovery completed, with a focus [] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Story*, 2021 WL 736962, at *8 (alternation in original, internal quotation marks and citation omitted). Though the parties here did not move beyond the pleadings stage, Plaintiffs did conduct a comprehensive investigation which included interviewing former employees of Arrow, reviewing Arrow's SEC filings, press releases, and other publicly available information, and consulting with experts. Therefore, the

Court finds that Plaintiffs had a thorough understanding of the strengths and weaknesses of their case prior to entering into the Settlement. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 312 (E.D.N.Y. 2006) (settlement approved where counsel had "a clear view of the strengths and weaknesses of the case") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). The parties "need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make an appraisal of the settlement." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (internal quotation marks and citation omitted); *see also In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("Although the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms."); *In re Global Crossing Sec. & ERISA Litig .*, 225 F.R.D. 436, 458 (S.D.N.Y.2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."). Therefore, despite the lack of formal discovery, the Court finds that this factor weighs in favor of approval.

### d. Risks of Establishing Liability and Damages and Maintaining Class Action

The fourth, fifth, and sixth *Grinnell* factors, which address "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial," also strongly support the Settlement. *See Grinnell*, 495 F.2d at 463. "In assessing the fourth, fifth, and sixth factors, which are often considered together, the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case." *Story*, 2021 WL 736962, at *8-9 (internal quotation

marks and citation omitted).  "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (internal quotation marks and citation omitted).  "In assessing the risks, courts recognize that the complexity of Plaintiff's claims *ipso facto* creates uncertainty." *Id.* (internal quotation marks and citation omitted).

Here, while Plaintiffs and Lead Counsel believe that they would prevail on their claims asserted against Defendants, they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal.  A trial on the merits would involve risks for Plaintiffs as to both liability and damages.  Plaintiffs would have to prove that the alleged statements and omissions were false or misleading and that they were made with scienter.  Indeed, "[t]he difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11.  Moreover, Plaintiffs would likely face difficult loss causation defenses, as Arrow would likely attempt to disaggregate the portion of the price declines that arose from the alleged corrective disclosure from the declines that were caused by other confounding factors.  *See, e.g., Police & Fire Ret. Sys. of City of Detroit v. Safenet, Inc.*, 645 F. Supp. 2d 210, 228-29 (S.D.N.Y. 2009) (dismissing claims based on stock drop following press release for failure to "explain why the disclosure on page 8–as opposed to all other information in the extended 12 page release–caused the price decline").  Courts have recognized that ascertaining damages in similar cases is a "complicated concept, both factually and legally," which might involve "conflicting expert opinion." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).  Finally, if the case were to go forward, the parties would have to litigate a motion for class certification, which itself would require extensive discovery.  Moreover, a defendant can move to de-certify a class at any time.  As such, "the process of class certification

would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *12.

In total, risk, expense, and delay would permeate this case if it moved forward. As such, the Court finds that the fourth, fifth, and sixth *Grinnell* factors weigh in favor of granting final approval.

### e. Defendant's Ability to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses the defendant's ability to withstand a greater judgment. *See Grinnell*, 495 F.2d at 463. "Even assuming that it could withstand a greater judgment, 'this factor, standing alone, does not suggest that the settlement is unfair.'" *Story*, 2021 WL 736962, at *9 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). "Indeed, a defendant is not required to empty its coffers before a settlement can be found adequate." *Id.* (internal quotation marks and citation omitted). Here, this factor is, at best, neutral, and does not suggest that the settlement is unfair.

### f. Range of Reasonableness

The final two *Grinnell* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation," also support approval of the settlement. *Grinnell*, 495 F.2d at 463. "Courts typically analyze the final two *Grinnell* factors together." *Story*, 2021 WL 736962, at *9 (citing *Global Crossing*, 225 F.R.D. at 460). "In analyzing these two factors, a reviewing court 'consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.'" *Id.* (quoting *Grinnell*, 495 F.2d at 462). "The determination of whether a settlement amount is reasonable 'does not involve the use of a

mathematical equation yielding a particularized sum.'" *Id.* (quoting *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012)). "Rather, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.* (internal quotation marks and citation omitted). "Moreover, the settlement amount must be judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs case." *Id.* (internal quotation marks and citation omitted).

In the present matter, the total monetary value of the Settlement is $850,000. This amount represents substantial value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, succeeded on all claims at trial, and survived an appeal with the judgment intact. By Lead Counsel's estimation, the monetary value of the Settlement represents approximately 16% of Defendants' estimated exposure, assuming Plaintiffs and the Settlement Class Members were to prevail on all of their claims. The Settlement represents a substantial recovery for Settlement Class Members, particularly in light of the risks of litigation. Weighing the benefits of settlement against the available evidence and the risks associated with proceeding in the litigation, the Court finds that the recovery is fair and reasonable.

### g. Remaining Factors in Rule 23(e)(2)(C)-(D)

Rule 23 also requires the Court to consider whether the relief provided in the Settlement is adequate and whether the proposed Settlement treats Settlement Class Members equitably relative to each other. As discussed above, the record demonstrates that the Settlement provides adequate relief to Settlement Class Members by avoiding the cost and risk of further litigation, and the Parties have proposed an effective method for processing and allocating Settlement Class

Members' claims.  Additionally, the parties have identified the sole agreement made in connection with the proposed Settlement: an opt-out provision which generally provides that "if Settlement Class Members opt-out of the Settlement such that the number of shares of Arrow securities otherwise eligible to recover damages represented by such opt-outs exceeds a certain amount, Defendants shall have the option to terminate the Settlement."  Dkt. No. 41-1 at 29; *see also* Dkt. No. 37-3 at ¶11.5.  Such an agreement, even where the specific terms are kept confidential, is "standard practice in securities fraud class action settlements" and does not pose an obstacle to approval.  *Pearlstein v. Blackberry Limited*, No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *7 (S.D.N.Y. Sep. 29, 2022).  Moreover, the Settlement treats Settlement Class Members equitably.  The Plan of Allocation calls for Settlement Class Members to receive a *pro rata* share of the Net Settlement Fund based upon their recognized losses compared to the recognized losses of other Settlement Class Members.  *See* Dkt. 41-3 at 16.[7]  The Court finds that this allocation is reasonable and treats all Settlement Class Members in an equitable manner.  *See Story*, 2021 WL 736962, at *10 (citations omitted); *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) (finding that the requirement that class members be treated equitably relative to each other is satisfied where each class member was to receive a "pro

---

[7] For this reason, the Court also separately approves the Plan of Allocation.  "The plan [of allocation] need only have a reasonable, rational basis when created by competent and experienced counsel."  *Burns v. FalconStor Software, Inc.*, 10 CV 4572 (ERK), 10 CV 4632 (ERK), 2014 WL 12917621, at *6 (E.D.N.Y. Apr. 11, 2014).  Here, that standard is easily satisfied.  The Plan of Allocation "recognizes differences incurred by those who bought and sold their shares at different prices and times" and it offers no reward for those "who bought and then sold shares, 'before the relevant truth beg[an] to leak out[.]"  Dkt. No. 41-1 at 25.  Using these parameters, the Plan of Allocation then distributes the Net Settlement Fund on a pro rata basis, comparing Claimants' recognized losses.  *Id.*  Similar plans have been approved in this circuit, and thus, the Court approves the Plan of Allocation.  *See Luxottica*, 233 F.R.D. at 317 (approving plan of allocation as fair and reasonable where it treated class members equally and on a pro rata basis and comported with the plaintiffs' theory of damages).

rata share" of the settlement fund).    Finally, as will be discussed in more detail below, Plaintiff's

proposed award of attorneys' fees is reasonable.

As such, the Court finds that both the *Grinnell* factors and the Rule 23(e)(2) factors weigh

in favor of approving the Settlement.    The Court therefore approves the Settlement.[8]

### D.  Service Award

The Named Plaintiffs seek a Service Award of $2,000 each for serving as Class

Representative.  "Courts regularly grant requests for service awards in class actions to compensate

plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks

incurred by becoming and continuing as a litigant, and any other burdens sustained by the

plaintiffs."  *Story*, 2021 WL 736962, at *11 (internal quotation marks and citation omitted).  A

Service Award of $2,000 for each of the Named Plaintiffs is reasonable and within the range of

awards granted in this Circuit.  *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624

(S.D.N.Y. 2012) (finding a service award of $7,500.00 reasonable).    Accordingly, the Court

awards $4,000 in total, or $2,000 for Lead Plaintiff Robert C. Ashe and $2,000 for Plaintiff Jeffrey

S. Gohn, as a compensatory award for their service to the Class and for reasonable costs and

expenses directly relating to the representation of the Settlement Class as provided in 15 U.S.C.

§78u-4(a)(4), such amounts to be paid from the Settlement Fund upon the Effective Date of the

Settlement.

### E.  Costs

Lead Counsel requests reimbursement of $41,850.52, plus interest, for litigation costs and

expenses.  Dkt. No. 41-2 at ¶ 5.  "Attorneys may be compensated for reasonable out-of-pocket

---

[8] In approving the settlement, the Court approves each provision of the Stipulation.  Dkt. No. 37-3.  To effectuate the Stipulation, the Court incorporates the provisions of the parties' Proposed Order and Final Judgment, Dkt. No. 37-8, including the Contribution Bar Order, *id.* at ¶ 10.

expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *Story*, 2021 WL 736962, at \*11 (internal quotation marks and citation omitted); *see also In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 490 (E.D.N.Y. 2002) (awarding reimbursement of $100,000 in litigation expenses). Here, the Notice Packet informed Settlement Class Members that Lead Counsel would seek reimbursement of expenses not to exceed $85,000. Dkt. No. 37-5 at 3. The majority of the costs are attributable to experts, investigations, legal research, and travel expenses, all of which were necessary. *See* Dkt. No. 42-4 at 4.

Accordingly, the Court awards expenses in the amount of $41,850.52, plus any applicable interest, such amount to be paid out of the Settlement Fund immediately following entry of this Order.

### F. Attorneys' Fees

Lead Counsel moves for an award of attorneys' fees in the amount of $283,900 which constitutes 33.4% of the value of the Settlement.

#### i. Method of Calculating Attorneys' Fees

"Attorneys who create a common fund from which members of a class are compensated are entitled to a reasonable fee—set by the court—to be taken from the fund." *Story*, 2021 WL 736962, at \*11 (internal quotation marks and citation omitted). "Such a fee award directly depletes the amount by which the class benefits." *Id.* "Accordingly, the Court has a duty to award fees with moderation and a regard for the rights of those with an interest in the fund who are not before the Court." *Id.* (citation omitted).

The Second Circuit has sanctioned two methods—the percentage method and lodestar method—for calculating reasonable attorneys' fees in class actions. *See Goldberger v. Integrated*

24

*Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). "The Court has discretion to award fees based on either the percentage method or the lodestar method." *Story*, 2021 WL 736962, at *11 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)). "Courts in this Circuit routinely use the percentage method to compensate attorneys in common fund cases such as this action." *Id.* at *12 (citations omitted). The "percentage method" is the far simpler method "by which the fee award is some percentage of the fund created for the benefit of the class." *Id.* (internal quotation marks and citations omitted). Under either method, the touchstone of the inquiry is whether the award is reasonable. *See Goldberger*, 209 F.3d at 50. A court determines reasonableness by evaluating: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy. *Id.* (citation omitted).

### a. Comparison to Court-Approved Fees in Other Common Fund Settlements

"In using the percentage of the fund approach, the Court must first determine a baseline reasonable fee percentage in relation to the settlement, using common fund settlements of similar magnitude and complexity as guidance." *Story*, 2021 WL 736962, at *12 (citation omitted). "Additionally, a sliding scale approach—awarding a smaller percentage of the settlement as the amount of the settlement fund increases—is appropriate in order to avoid overcompensating the plaintiff's counsel to the detriment of the class members they represent." *Id.* (citations omitted).

Lead Counsel contends that a fee of 33.4% of the value of the Settlement to be payable from the Settlement Fund is reasonable and commonly awarded in cases of this nature. The Court finds that it is a reasonable baseline in the present matter. *See Edwards,* 2023 WL 5806409, at *11 (awarding class counsel 33.33% of the Settlement Fund); *Lowe*, 2022 WL 4621433, at *11 (same); *Thompson v, Community Bank, N.A.*, 8:19-CV-919 (MAD/CFH), 2021 WL 4084148, at

*10 (N.D.N.Y. Sep. 8, 2021) (same); *Baudin v. Res. Mktg. Corp., LLC*, No. 1:19-CV-386, 2020

WL 4732083, at *12 (N.D.N.Y. Aug. 13, 2020) (same).

### b. Counsel's Time and Labor

Lead Counsel expended significant effort to achieve the settlement.  For this case, Lead

Counsel first conducted an investigation which included interviewing former Arrow employees

and reviewing Arrow's SEC filings, press releases, and other publicly available information.  It

then conducted legal research and consulted with experts to assess the strength of the claims,

prepared and filed both a complaint and an amended complaint, began preparing an opposition to

Defendants' motion to dismiss, engaged in settlement negotiations, moved for preliminary

approval of the settlement, and oversaw the work of the Claims Administrator.  Dkt. No. 42-2 at ¶

20.  Indeed, Lead Counsel's work in assisting in the distribution of the Settlement Fund will

continue, further supporting an award of attorneys' fees.  *See In re Facebook, Inc. IPO Sec. &*

*Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015)

("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will

necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in

submitting their Proof of Claims, the time and labor expended by counsel in this matter support a

conclusion that a 33% fee award in this matter is reasonable."), *aff'd sub nom. In re Facebook,*

*Inc.*, 674 F. App'x 37 (2d Cir. 2016); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ.

4825(JLC), 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("That Class Counsel's fee award

will not only compensate them for time and effort already expended, but for time that they will be

required to spend administering the settlement going forward, also supports their fee request.").

Lead Counsel asserts that over the course of the litigation, they expended 831.99 hours of work for an aggregate lodestar of $638,664.75.[9] Dkt. No. 42-2 at ¶ 30.  Considering the complexity of securities class actions in general and the overall result obtained, the Court finds that the time spent by counsel is reasonable and supports the requested award.

### c.  Complexity of the Case

The magnitude and complexity of this case also supports the requested award.  "Most class actions are inherently complex, and settlement avoids the costs, delays and multitudes of other problems associated with them."  *Story*, 2021 WL 736962, at *13 (internal quotation marks and citation omitted).  This case is no exception.  Again, "securities class actions are recognized by courts as 'notably difficult and notoriously uncertain to litigate.'"  *In re Facebook, Inc., IPO Securities and Derivative Litigation*, 343 F. Supp. 3d at 409 (quoting *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. at 53).  Plaintiffs' claims involve complicated damages, causation, and scienter arguments.  Therefore, the Court finds the complexity of the case supports the requested award.  *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

### d.  Risk of Litigation

Lead Counsel undertook risk in accepting the case on a contingency basis.  *Story*, 2021 WL 736962, at *13.  In the face of the risk of no recovery, Lead Counsel proceeded with the litigation and obtained a favorable outcome for the class.  Thus, Lead Counsel invested extensive time and

---

[9] Based on the unopposed lodestar amount, the requested award of 33.4% also passes a lodestar "cross-check."  *Goldberger*, 209 F.3d at 50.

costs with no guarantee of success. Lead Counsel's efforts are especially worthy of award in the securities class action context, which, as noted, are notably difficult and notoriously uncertain. Therefore, the risk of the litigation weighs heavily in favor of the requested award.

### e.  Quality of the Representation

Lead Counsel competently and efficiently represented Plaintiffs in prosecuting this case. Indeed, the positive reaction to the Settlement by the Settlement Class Members indicates to this Court that Lead Counsel effectively represented the Settlement Class Members. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee."). As such, this factor supports the requested award.

### f.  Policy Considerations

Lastly, the attorneys' fees award may be altered due to policy considerations. *See In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 127 (2d Cir. 2014). Attorneys' fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51 (citation omitted). "On the other hand, fees should compensate counsel only for the value they create, or the court risks incentivizing class counsel to settle cases in a manner detrimental to the class." *Story*, 2021 WL 736962, at *13 (citation omitted).

Lawsuits such as this one further the objective of federal securities laws to protect investors and consumers against deceptive practices. *See Flag Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

Accordingly, the Court grants Lead Counsel an award of attorneys' fees in the amount of $283,900 plus interest, such amount to be paid out of the Settlement Fund immediately following entry of this Order.

## IV.    CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiffs' unopposed Final Approval Motion, Dkt. No. 41, is **GRANTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's unopposed Attorneys' Fees Motion, Dkt. No. 42, is **GRANTED in its entirety**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment, dismiss the case with prejudice, and close the case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>February 13, 2025</u>
      Albany, New York

Anne M. Nardacci
U.S. District Judge